# In the United States Court of Federal Claims

No. 09-326 C

(E-Filed:  June 1, 2009)

(E-Filed for Publication:  June 10, 2009)

| | |
|---|---|
| _____ )<br><br>AKAL SECURITY, INC. )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>SECURITY CONSULTANTS GROUP, INC. )<br><br>Defendant-Intervenor. )<br>_____ ) | Bid Protest; Motion for Redaction Granted-in-Part and Denied-in-Part |

Seth C. Berenzweig, Arlington, VA, for plaintiff.  Terrence M. O'Connor and Stephanie D. Wilson, Arlington, VA, of counsel.

Gregg P. Yates, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Douglas Becker, Associate Legal Advisor, Commercial and Administrative Law Division, Immigration and Customs Enforcement Office of the Principal Legal Advisor, United States Department of Homeland Security, Washington, DC, of counsel.

Holly A. Roth, Washington, DC, for defendant-intervenor.  Stephen M. Ryan, of counsel.

## OPINION AND ORDER[1]

HEWITT, Chief Judge

---

[1] Footnote 1 to the court's June 1, 2009 Opinion, e-filed under seal, stated:

> This Opinion is filed under seal. If any party believes that this Opinion contains protected material that should be redacted before publication, that party shall, by motion to be filed on or before Thursday, June 4, 2009, request that such protected material be redacted. The motion shall indicate the specific protected material as to which redaction is requested and, with respect to each such proposed redaction, the reason(s) for the request.

Opinion of June 1, 2009, Dkt. No. 25, at 1 n.1.

On June 4, 2009, defendant filed Defendant's Notice of Proposed Redactions to the Court's June 1, 2009 Order and Opinion (Redaction Motion or Redact. Mot.). In the Redaction Motion defendant proposed redactions of "information that [defendant] believe[s] is either confidential, proprietary, or protected by [the] protective order issued in this matter." Redact. Mot. 1. On June 5, 2009 the court issued an order stating that the parties could propose additional redaction until 5:00 p.m. Eastern Daylight Time (EDT) on June 8, 2009. Order of June 5, 2009, Dkt. No. 27. On June 8, 2009, plaintiff filed Plaintiff's Notice of Proposed Redactions to the Court's June 1, 2009 Order and Opinion (plaintiff's Notice or Pl.'s Not.) stating that "[p]laintiff requests that the protected material identified in [defendant's] proposed redactions filed with the [c]ourt on June 4, 2009, be redacted before publication." Pl.'s Not. 1. Plaintiff stated that the "proposed redactions reflect information that is either confidential, proprietary, or protected by the Protective Order issued in this matter." Id.

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "a presumption of public access to judicial records" exists. Baystate Techs., Inc. v. Bowers, 283 Fed. App'x 808, 810 (Fed. Cir. 2008) (Table) (citing Siedle v. Putnam Invs., Inc. (Siedle), 147 F.3d 7, 9 (1st Cir. 1998); Poliquin v. Garden Way, Inc., 989 F.2d 527, 533 (1st Cir. 1993)). The Federal Circuit further stated that "in determining whether a protective order should be modified, the court must balance the privacy interests of the parties against the public interest in access to the . . . information." Id. (discussing access to discovery information) (citing Siedle, 147 F.3d at 10).

The proposed redactions appear to the court to be over-broad. The court does not perceive, for example, how adjectival ratings by the government of past performance and management approach could be viewed as confidential, proprietary or otherwise protected by the protective order in this case, or how the fact that a company is or was evaluated as a small business could be protected information. Accordingly, the court has accepted some, but not all, of defendant's proposed redactions. All redactions are indicated by three asterisks.

2

The court has before it Plaintiff's Application for a Temporary Restraining Order (plaintiff's Application or Pl.'s App.) and Motion for Preliminary Injunction and Plaintiff's Memorandum in Support of Its Application for a Temporary Restraining Order and Motion for Preliminary Injunction (plaintiff's Motion or Pl.'s Mot.), filed May 21, 2009, Defendant's [Corrected] Opposition to Plaintiff's Motion for Preliminary Injunction (defendant's Response or Def.'s Resp.) (alteration in original), filed May 27, 2009, and Defendant-Intervenor Security Consultants Group, Inc.'s ("SCG") Memorandum in Opposition to Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction of the Federal Protective Service['s] Award of a Blanket Purchase Agreement to SCG (defendant-intervenor's Response or Def.-Int.'s Resp.), filed on May 27, 2009.

The court held a hearing on May 28, 2009 at 3:00 p.m. Eastern Daylight Time (EDT) with Mr. Seth Berenzweig, counsel for plaintiff, Akal Security, Inc. (Akal), Mr. Gregg Yates, defendant's counsel, and Ms. Holly Roth and Mr. Stephen M. Ryan, counsel for defendant-intervenor, Security Consultants Group, Inc. (SCG). This opinion addresses only the aspect of plaintiff's Motion that requests a preliminary injunction and not the merits of plaintiff's case beyond the court's observations related to the court's application of the standards for granting or denying a preliminary injunction. These observations are preliminary and subject to change in the light of the filing of the Administrative Record (AR), further briefing, and oral argument.

For the foregoing reasons, plaintiff's Motion is DENIED.

I.    Background

Plaintiff, Akal, challenges two Blanket Purchase Agreements (BPAs) awarded by the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, Federal Protective Service (FPS, Agency, defendant, or government) pursuant to solicitations of competitive requests for quotations (RFQs) for armed security guard services in Illinois and Indiana. Complaint for Declaratory and Injunctive Relief (Complaint or Compl.), filed May 21, 2009 ¶ 4. FPS awarded the Illinois BPA to SCG and the Indiana BPA to DECO Security Services, Inc. (DECO). Id. Akal is the incumbent contractor for an FPS armed security guard contract that covers a four-state area including Indiana and Illinois. Id. ¶ 5. Akal's current contract in Indiana ends on May 31, 2009 and its current contract in Illinois ends on June 30, 2009. Id. ¶¶ 6-7.

3

FPS issued identical RFQs for Illinois and Indiana.[2]  Def.'s Resp. 3-4.  The RFQ for Illinois, HSCEC5-08-Q-00032 (Illinois RFQ) was issued on September 26, 2008 and the RFQ for Indiana, HSCEC5-08-Q-00033 (Indiana RFQ) was issued on September 29, 2008.[3]  Id. at 4.  The RFQs state that the contracts would be awarded on a "best value" basis.  Def.'s Resp. Appendix (App.)[4] 4, 9.  The RFQ stated that bidders would be evaluated on two non-price factors – past performance and management approach – and that past performance would be more important than management approach.  The two non-price factors, when combined, were considered to be "significantly more important than price."  Def.'s Resp. App. 2, 7.

Akal challenges the Agency's evaluation of its past performance and its management approach for the Illinois RFQ and the Indiana RFQ.  Compl. ¶ 12.

II.     Preliminary Injunctive Relief

A.      Jurisdiction and Standing

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), 28 U.S.C. § 1491(b)(1) (2006), confers jurisdiction on this court to:

> render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (emphasis added).  The court reviews a bid protest action under the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706 (2006).

---

[2]  Except as otherwise noted, the court will address the Indiana and Illinois Blanket Purchase Agreements (BPAs) together.

[3]  Defendant's Corrected Opposition to Plaintiff's Motion for Preliminary Injunction (defendant's Response or Def.'s Resp.) states that the Indiana request for quotations (RFQ) was issued on September 30, 2008, but the appendix to defendant's Response shows that the RFQ was issued on September 29, 2008.  See Def.'s Resp. Appendix (App.) 6.  This inconsistency is of no consequence.

[4]  An Administrative Record (AR) has not yet been filed in this case.  For the purposes of deciding whether or not to grant a preliminary injunction, the parties and the court have relied on materials attached as an appendix to defendant's Response.  That appendix, while not exhaustive, contains a portion of the materials that would be expected to be contained in the AR.

4

28 U.S.C. § 1491(b)(4); <u>NVT Techs., Inc. v. United States</u> (<u>NVT Techs.</u>), 370 F.3d 1153, 1159 (Fed. Cir. 2004).  The APA provides that an agency's decision is to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); <u>see also</u> <u>Galen Med. Assocs., Inc. v. United States</u> (<u>Galen</u>), 369 F.3d 1324, 1329 (Fed. Cir. 2004); <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001).

"To qualify as an 'interested party,' a protestor must establish that:  (1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement." <u>Distributed Solutions, Inc. v. United States</u>, 539 F.3d 1340, 1344 (Fed. Cir. 2008).   Here, plaintiff was an actual offeror, Compl. ¶¶ 29-30. The remaining issue is whether Akal has a "direct economic interest."

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has stated that a bidder has a direct economic interest exists when it has a "greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." <u>Info. Tech. & Applications Corp. v. United States</u> (<u>Info. Tech.</u>), 316 F.3d 1312, 1319 (Fed. Cir. 2003).  "The term 'interested parties' excludes those who did not submit proposals, bidders who withdrew from a solicitation, and offerors who were not competitively ranked for award." <u>Microdyne Outsourcing, Inc. v. United States</u>, 72 Fed. Cl. 230, 232 (2006) (citing <u>Impresa</u>, 238 F.3d at 1334).  A plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process.  In other words, the protestor's chance of securing the award must not have been insubstantial." <u>Info. Tech.</u>, 316 F.3d at 1319 (citation omitted).

The government claims that Akal lacks standing because Akal "never had a 'substantial chance' to win [the BPAs]." Def.'s Resp. 22 (discussing <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1358 (Fed. Cir. 2005) ("To establish prejudice [plaintiff] was required to show that there was a 'substantial chance' it would have received the contract award but for the [agency's] errors in the bid process.")).  The government also states that Akal was "outside the 'zone of active consideration.'" <u>Id.</u> (quoting <u>Avtel Servs., Inc. v. United States</u>, 501 F.3d 1259, 1262 (Fed. Cir. 2007)).  The government notes that Akal was not ranked first or second in either procurement. <u>Id.</u> at 23.  The government argues that because Akal's "quotes in response to both RFQs were outside the zone of consideration with respect to both technical factors and price [Akal] did not have a substantial chance of winning either the Illinois or Indiana BPAs." <u>Id.</u>

Plaintiff disputes defendant's contention that plaintiff lacks standing because it was not in the zone of consideration.  At oral argument, plaintiff pointed out that under some rankings Akal would have been in second place in the Illinois BPA, Oral Argument

of May 28, 2009, Argument of Mr. Seth Berenzweig at 3:14:40-15:40,[5] and that the government was "incorrect" in saying that Akal was in fifth place in Indiana, id.  Plaintiff also pointed out that a bidder ranked higher than Akal in the Illinois procurement and, according to FPS, had a "too low" profit rate and that there was a "risk of that contractor not being able to perform to the terms of the BPA, and a risk of non-performance." Def.'s Resp. App. 86.

It appears to the court – on this preliminary view of the facts – that the chances of Akal's receiving an award were not clearly "insubstantial" and that plaintiff may have had a "substantial" chance of securing an award.  The court finds, for the purposes of plaintiff's Motion, that Akal has a "direct economic interest" as an actual bidder in response to the RFQs and that there was a "greater than insubstantial chance" that Akal would have received an award.  Accordingly, Akal has standing in this matter.

B.      Standard for Injunctive Relief

The Tucker Act, as amended by the ADRA, authorizes this court to "award any relief that the court considers proper, including . . . injunctive relief."  28 U.S.C. § 1491(b)(2); see Rule 65 of the Rules of the United States Court of Federal Claims (RCFC).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis omitted) (citation omitted); see also Software Testing Solutions, Inc. v. United States, 58 Fed. Cl. 533, 536 (2003).  It is a "'drastic and extraordinary remedy that is not to be routinely granted.'"  Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004) (discussing a preliminary injunction in a patent case) (quoting Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993)).  "A preliminary injunction is extraordinary relief that is available only on a special showing of need for relief pendente lite."  MercExchange, LLC v. eBay, Inc., 401 F.3d 1323, 1339 (Fed. Cir. 2005) (discussing preliminary injunctions in patent cases), rev'd on other grounds, 547 U.S. 388 (2006).

The Federal Circuit has stated that a party is entitled to a preliminary injunction if: (1) the party has a likelihood of success on the merits; (2) the party will be irreparably harmed without injunctive relief; (3) the balance of hardships favors the petitioning party; and (4) the public interest favors the grant of injunctive relief.  Erico Int'l Corp. v. Vutec

---

[5]  The oral argument held on May 28, 2009 was recorded by the court's Electronic Digital Recording system (EDR).  All time stamps noted in this Opinion refer to the EDR record of the oral argument.

Corp., 516 F.3d 1350, 1353-54 (Fed. Cir. 2008) (discussing injunctive relief in a patent context); FMC Corp. v. United States (FMC), 3 F.3d 424, 427 (Fed. Cir. 1993); see also Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1344 (Fed. Cir. 2008), reh'g and reh'g en banc denied (Feb. 23, 2009).  No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others."  FMC, 3 F.3d at 427.  However, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify . . . denial" of a preliminary injunction.  Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 953 (Fed. Cir. 1990).

1.      Likelihood of Success on the Merits

A plaintiff must show a "reasonable probability" of success on the merits to justify a preliminary injunction.  Bannum, Inc. v. United States, 56 Fed. Cl. 453, 457 (2003); see also 11A Fed. Prac. & Proc. Civ. 2d (Wright, Miller & Kane) § 2948.3; A.L.K. Corp. v. Columbia Pictures Indus., Inc., 440 F.2d 761, 763 (3d Cir. 1971).  The degree of likelihood of success considered by itself is not determinative.  Wright, Miller & Kane § 2948.3.

Judicial review of agency procurement decisions is extremely limited.  A "'disappointed bidder bears a "heavy burden" of showing that the award decision "had no rational basis."'"  Impresa, 238 F.3d at 1333 (quoting Saratoga Dev. Corp. v. United States, 21 F.3d 445, 456 (D.C. Cir. 1994)).  The burden is greater when, as is the case here, the procurement is a "best value" procurement.  Galen, 369 F.3d at 1330 ("[A]s the contract was to be awarded based on 'best value,' the contracting officer had even greater discretion than if the contract were to have been awarded on the basis of cost alone.")

Plaintiff claims that the Agency's determination that Akal's past performance was "Acceptable" was "arbitrary and capricious and an abuse of discretion" because Akal "received past performance ratings of 'Highly Acceptable' and 'Outstanding'" by other agencies with which Akal was a contractor for security services.  Pl.'s Mot. 9-10.  Plaintiff also claims that it was "arbitrary and capricious and an abuse of discretion" for "the Agency to selectively rely only upon the language in the 'added value' section of [Akal's] Management Approach . . . and ignore [Akal's] explanation as to how it would manage a requirement for just Illinois or Indiana."  Id.

a.      Past Performance

Akal claims that FPS's ranking of its past performance as "Acceptable" was a violation of the APA because Akal had received evaluations of "Outstanding" from two of its evaluators.  Pl.'s Mot. 10-12.  However, the Agency had before it past performance

ratings of Akal that were not just "Highly Acceptable" or "Outstanding." Def.'s Resp. 6. The Agency had ratings from the sources Akal itself submitted ranging from "Satisfactory" to "Outstanding." Id. Additionally, the RFQs stated that the Agency "reserve[d] the right to obtain information for use in the evaluation of past performance from sources other than those identified by the quoter." Def.'s Resp. App. 2, 7. FPS had past performance reviews from its own records that ranged from "Marginal" to "Excellent." Def.'s Resp. 7-11 (listing data from the Past Performance Information Retrieval System (PPIRS)); Def.'s Resp. App. 156-57. At oral argument, defendant-intervenor noted specific evaluations in the record that were neither "Outstanding" nor "Highly Acceptable." Oral Argument of May 28, 2009, Argument of Mr. Stephen M. Ryan at 3:51:00-52:59 (citing Def.'s Resp. App. 63, 167, 172, 201).

At oral argument, plaintiff contended that some of the PPIRS evaluations were not recent and that "the FAR supports a preference for recency." Oral Argument of May 28, 2009, Argument of Mr. Seth Berenzweig at 3:12:00-12:30. Plaintiff cited Federal Acquisition Regulation (FAR) § 42.1503(e) which states "[t]he past performance information shall not be retained to provide source selection information for longer than three years after completion of contract performance." 48 C.F.R. § 42.1503(e) (2008). Plaintiff also pointed to FAR § 15.305(a)(2)(i) which states "[t]he currency and relevance of [past performance information], source of the information, context of the data, and general trends in contractor's performance shall be considered." 48 C.F.R. § 15.305(a)(2)(I) (2008).

At oral argument, defendant pointed out that several of the less flattering past-performance reviews were recent. Oral Argument of May 28, 2009, Argument of Mr. Gregg Yates at 3:25:20-25:27. Defendant-intervenor discussed a paragraph in the Technical Evaluation Team Memorandum (TETM) for the Illinois BPA which articulated the reasons why FPS gave Akal an "Acceptable" rating. Oral Argument of May 28, 2009, Argument of Mr. Stephen M. Ryan at 3:51:00-52:59 (citing Def.'s Resp. App. 63). The TETM states:

> While [Akal] has had extremely relevant past projects, it has not consistently performed them in an outstanding manner, as evidenced by two questionnaires that rated its performance as "satisfactory" and by PPIRS reports that consistently rated its performance as less than "outstanding", including a report that rated their performance on one contract as "marginal.["]

Def.'s Resp. App. 63.

8

Based on this paragraph, and the other evidence in the record before the court at this juncture, the court does not find the Agency's ranking of Akal's past performance as "Acceptable" to be "arbitrary and capricious." See 48 C.F.R. § 15.305(a)(2)(ii) ("The Government shall consider [past performance information provided by an offeror], as well as information obtained from any other sources, when evaluating the offeror['s] past performance.  The source selection authority shall determine the relevance of similar past performance information.").  Accordingly, it does not appear that Akal has a reasonable likelihood of success on the merits of its claim regarding past performance.

b.    Management Approach

Akal also claims that FPS's ranking of its management approach as "Acceptable" was a violation of the APA.  See Pl.'s Mot. 6.  The RFQ stated that quoters should focus on their "unique competitive advantage" and requested quoters to address the "firearms transition."[6]  Def.'s Resp. App. 3, 8.  Akal claims that FPS penalized Akal because it included [***].  Pl.'s Mot. 13-14.

The government claims that FPS viewed Akal's management approach as "Acceptable" because "[Akal's] plan was based upon the assumption that [Akal] would [***]" and that the "size and complexity of [***] could negatively impact contract performance."  Def.'s Resp. 11-13 (citing Def.'s Resp. App. 36-37, 64-65).

At oral argument defendant-intervenor pointed to the unique competitive advantages that the Agency considered when selecting SCG for the Illinois BPA.  Oral Argument of May 28, 2009, Argument of Mr. Stephan M. Ryan at 3:56:22-57:04.  These advantages were SCG's use of [***] and an [***]  Def.'s Resp. App. 78.  Defendant-intervenor pointed to places in the record where FPS found that Akal's management approach suffered from "excessive management" because of Akal's [***]  and that there was a "greater risk" for the Illinois BPA because of its unique licensing requirements.  Def.'s Resp. App. 81.

Accordingly, based on the record before the court at this juncture, specifically the discussion in the TETM of FPS's consideration of SCG's and Akal's management

---

[6]  The term "firearms transition" refers to the requirement of the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, Federal Protective Service (FPS, Agency, government, or defendant) that bidders address the Agency's transition from using .38 caliber revolvers to .40 millimeter semi-automatic weapons.  Plaintiff's Memorandum in Support of Its Application for a Temporary Restraining Order and Motion for Preliminary Injunction (plaintiff's Motion or Pl.'s Mot.) 13 n.3.

approaches, it appears that Akal does not have a reasonable likelihood of success on the merits of its claim regarding management approach.

      c.      Lack of a Debriefing in the Indiana Procurement

FAR § 8.405-2(d) states, "If an unsuccessful offeror requests information on an award that was based on factors other than price alone, a brief explanation of the basis for the award decision shall be provided."  48 C.F.R. § 8.405-2(d) (2008).  The Agency has not provided Akal with a debriefing on the award of the Indiana BPA.[7]  Pl.'s Mot. 15. Akal requested a debriefing on April 7, 2009.  Id.

As defendant notes, the fact that the Agency did not provide Akal with a debriefing does not affect the likelihood of success on the merits of Akal's case.  See Def.'s Resp. 24 n.2.  This violation of law "involves only post-award conduct" of the Agency and would not have affected the outcome of the Indiana RFQ.  See id. (emphasis in original).

      d.      Small Business

At oral argument plaintiff claimed that FPS considered DECO's status as a small business, a factor not mentioned in the Indiana RFQ.  Oral Argument of May 28, 2009, Argument of Mr. Seth Berenzweig at 3:30:04-30:25; see Def.'s Resp. App. 6-10.  The contracting officer in the Indiana RFQ wrote in the Pre/Post Negotiation Memorandum for Indiana Guard Services that the "[a]ward to a small business, [DECO], assists FPS in meeting established socio-economic goals."  Def.'s Resp. App. 105.  Whether or not this fact may be of any consequence on the merits of plaintiff's case, there is not enough in the record before the court at this juncture for the statement, taken by itself, to support the granting of a preliminary injunction.

      2.      Irreparable Injury

A plaintiff must also demonstrate irreparable injury in order to obtain injunctive relief.  To demonstrate an irreparable injury, a plaintiff must show that without a preliminary injunction it will suffer irreparable harm before a decision can be rendered on the merits.  Heritage of Am., LLC v. United States (Heritage), 77 Fed. Cl. 66, 78 (2007). The mere loss of money is not irreparable harm so long as the litigant can be made whole

---

   [7]  At oral argument plaintiff's counsel stated that it received a debriefing via e-mail on May 21, 2009.  Oral Argument of May 28, 2009, Argument of Mr. Seth Berenzweig at 3:18:50-18:58.

through money damages.  Id.  However, if a litigant has no action against the United States for lost profits, as is the case here, the harm to the litigant can be considered irreparable.  Id.  "[A] lost opportunity to compete in a fair competitive bidding process for a contract . . . has been found sufficient to prove irreparable harm."  Overstreet Elec. Co. v. United States (Overstreet), 47 Fed. Cl. 728, 744 (2000); see also Serco Inc. v. United States, 81 Fed. Cl. 463, 501-02 (2008) (finding irreparable harm because the only allowed monetary recovery – bid preparation costs – would not fully compensate the plaintiff); United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998) ("[T]he [loss of the] opportunity to compete for a contract and secure any resulting profits has been recognized to constitute significant harm."); Bean Dredging Corp. v. United States, 22 Cl. Ct. 519, 524 (1991) (finding that a bidder would be irreparably harmed because it "could recover only bid preparation costs, not lost profits, through an action at law").  But see Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381-82 (1997) ("[E]conomic harm without more, does not seem to rise to the level of irreparable injury.").

Defendant distinguishes Overstreet by stating that the court in Overstreet was faced with a judgment upon the administrative record and evaluated the case on its merits.  Def.'s Resp. 33-34.  Here, Akal states that it has shown irreparable harm because it "has been wrongfully deprived of the opportunities of the market place . . . and stands to lose profit."  Pl.'s Mot. 15.  In these circumstances the strength or weakness of Akal's merits arguments largely determines the court's view of irreparable injury.  Because Akal has not shown a reasonable likelihood of success on merits, the court concludes that the irreparable injury prong does not support injunctive relief.

3.    Balance of Hardships

The court must balance the harm plaintiff would suffer without preliminary relief against the harm that preliminary relief would inflict on defendant and on defendant-intervenor.  See Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 715-16 (2006).  Generally, if the balance tips in favor of defendant, a preliminary injunction is not appropriate.  See Wright, Miller & Kane §§ 2948.2, 2951.

Here, the court finds that the balance of harms support the denial of a preliminary injunction.[8]  The government has expended costs to "ramp up" to prepare for the

---

[8]  The court's findings concerning the balance of harms are based on information concerning events and developments occurring after award and therefore could not be expected to be based on evidence within the AR.  The focus of a decision on the merits of a bid protest case will ordinarily be "'the administrative record already in existence, not some new record

(continued...)

transition to DECO and SCG.  See Def.'s Resp. 35; Def.'s Resp. App. 144 (Declaration of Sally Arnold, Contracting Officer at FPS) (noting ramp-up costs to the government of $25,567.16).  Additionally, should the court grant plaintiff's Motion, plaintiff, as incumbent contractor, will continue to provide service, and, according to defendant, those services will cost more than the contract payments to DECO or SCG, an extra cost to defendant estimated at more than $68,000 a month.  See Def.'s Resp. 35-36; Def.'s Resp. App. 143-44 (Declaration of Sally Arnold).  Defendant also argues that the firearms transition will be delayed if the court grants plaintiff's Motion.  Def.'s Resp. 36; Def.'s Resp. App. 144.

Defendant-intervenor, as well as an interested non-party, DECO, will be significantly harmed by the issuance of a preliminary injunction in this case.  According to SCG, it has "already invested hundreds of thousands of dollars into preparation for the Illinois BPA" by [***].  Def.-Int.'s Resp. 18.  SCG has also [***].  Id.  It also has implemented proprietary [***].[9]  Id. at 18-19.  Defendant-intervenor claimed that if the court issued an injunction, Akal would receive the benefits of its preparation for the contract.  Def.-Int. Resp. 17-19.  While DECO is not a party to this litigation, the court finds it reasonable to assume that DECO has gone through similar preparations for the Indiana BPA, given the fact that DECO commences performance under the Indiana BPA on June 1, 2009.  See Compl. ¶ 6 (noting that Akal's current contract runs through May 31, 2009).

For the foregoing reasons, the court finds that the balance of harms weighs in defendant's and defendant-intervenor's favor.

---

[8](...continued)
made initially in the reviewing court.'"  Axiom Res. Mgmt., Inc. v. United States, No. 2008-5072, 2009 WL 1175510 at *4 (Fed. Cir. May 4, 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).  That focus serves the purpose of "guard[ing] against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'"  Id. (quoting Murakami v. United States (Murakami), 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005)).  However, supplementation may be allowed in "cases in which 'the omission of extra-record evidence precludes effective judicial review.'"  Id. (quoting Murakami, 46 Fed. Cl. at 735).  Because the "balance of harms" prong of the test for preliminary injunctive relief looks to matters outside the record of award, the court finds that the "'omission of extra-record evidence'" would frustrate or preclude "'effective judicial review.'"  See id. (quoting Murakami, 46 Fed. Cl. at 735).

[9]   At oral argument defendant–intervenor claimed that, as of the date of the oral argument, defendant-intervenor had a [***].  Oral Argument of May 28, 2009, Argument of Mr. Stephen M. Ryan at 4:00:41-00:48

4.      Public Interest

Finally, the court must consider whether issuing a preliminary injunction in this case will further or injure the public interest.  "The public interest is served by ensuring a procurement process conforms to applicable procurement regulations."  <u>Hawaiian Dredging Constr. Co. v. United States</u>, 59 Fed. Cl. 305, 317 (2004); <u>see also</u> <u>Parcel 49C Ltd. P'ship v. United States</u>, 31 F.3d 1147, 1152 (Fed. Cir. 1994) (discussing the public interest in enforcing procurement law).  If a procurement does "not conform to the requirements of the FAR, it is in the public interest to take action to redo the flawed procurement and, in doing so, correct the errors that occurred in the initial procurement process."  <u>Heritage</u>, 77 Fed. Cl. at 80.  However "there is a countervailing public interest in minimizing disruption [to the agency]."  <u>Id.</u>

The court agrees with the general proposition that the public interest is served by ensuring that the government complies with procurement regulations; however, Akal has not provided evidence that the Agency's actions failed to conform with applicable procurement regulations.[10]  <u>See</u> Compl. <u>passim</u>; Pl.'s Mot. <u>passim</u>.  In the court's view the public interest is also served when the court does not interfere in a procurement absent a legally compelling reason to do so.  The court finds no legally compelling reason before it at this juncture.

III.    Conclusion

For the foregoing reasons, plaintiff's Motion, insofar as it requests a preliminary injunction, is DENIED.

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Chief Judge

---

[10]  The court notes that Akal claims that FPS violated procurement regulations by failing to provide a debriefing in the Indiana BPA.  <u>See</u> Pl.'s Mot. 15.  However, as noted above, the alleged violation of law could not have affected the award of the BPA and the agency appears to have provided plaintiff with a debriefing on May 21, 2009.  <u>See</u> <u>supra</u> part II.B.1.c.